# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **GREAT AMERICAN INSURANCE COMPANY**<br>**301 East Fourth Street**<br>**Cincinnati, Ohio 45202,** | Case No.:_____<br><br>Judge _____ |
| **Plaintiff,** | |
| v. | |
| **HENRY BATTEN**<br>**105 North Shore Drive**<br>**Mooresville, North Carolina 28117-7406,**<br><br>and<br><br>**CONCRETE SUPPLY CO., LLC**<br>**3823 Raleigh Street**<br>**Charlotte, North Carolina 28299,**<br><br>  <u>Serve:</u><br>  **Ramsey H. Vaughn**<br>  **100 N. Greene St., Suite 600**<br>  **Greensboro, NC 27401-2546**<br><br>    **Defendants.** | **COMPLAINT FOR MONETARY DAMAGES** |

Plaintiff, Great American Insurance Company ("Great American"), by and through its undersigned counsel, hereby states for its Complaint against Defendants Henry Batten ("Batten") and Concrete Supply Co., LLC ("CSC") as follows:

## I.    PARTIES

1. Great American is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. Great American is duly qualified and authorized to transact business within the State of Ohio.

2. Upon information and belief, Batten is a resident of North Carolina who resides at 105 North Shore Drive, Mooresville, North Carolina 28117-7406. At all points in time, Batten has been a principal of CSC.

3. CSC is an entity organized under the laws of the State of North Carolina with its principal place of business located at 3823 Raleigh Street, Charlotte, North Carolina 28299. On information and belief, CSC is a ready-mix concrete manufacturer

## II. JURISDICTION AND VENUE

4. Great American brings its complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000

5. This Court has the personal jurisdiction over each defendant pursuant to Ohio's long-arm statute, including but not limited to O.R.C. 2307.382(A)(1), (3) and (6).

6. Venue is proper before this Court because the relevant actions and transactions occurred within this judicial district.

## III. FACTS

7. On or about September 12, 2017, CSC contracted with Spartan Materials, LLC ("Spartan Materials") for the purchase of 10,000 tons of coal fly ash for the sum of $500,000 (the "Contract"). Coal fly ash is used as a component in the concrete manufacturing process by concrete producers such as CSC. A copy of the Contract, which was signed by Batten as the President of CSC, is attached hereto as Exhibit A.

8. On information and belief, Batten was an active member of the Spartan Materials Board of Directors at the time he executed the Contract on behalf of CSC.

9. On or about December 29, 2017, Great American, as surety, issued performance Bond No. 2207105 guaranteeing the performance of Spartan Materials under the terms of the Contract (the "Bond"). A copy of the Bond is attached hereto as Exhibit B. CSC was listed as the obilgee under the terms of the Bond.

10. At no point in time either prior to or after Great American's issuance of the Bond, did Batten or any other representative of CSC ever advise Great American that Batten was a member of the Spartan Materials Board of Directors.

11. On or about September 12, 2018, Great American received a letter from CSC's lawyers asserting the following "facts":

- That CSC had entered into the Contract (as referenced above);

- That CSC had paid Spartan Materials the total Contract sum of $500,000 in advance of Spartan Material's procurement of the coal fly ash contemplated by the Contract; and

- That Spartan Materials had failed to deliver the coal fly ash on or before May 18, 2018 as required by the parties' Contract, and was therefore in breach of that agreement. Specifically, this letter stated "[t]o date, no fly ash has been delivered to CSC despite its payment." CSC's counsel thereafter stated that the letter should serve as notice of its client's intent to make a claim under the terms of the Bond.

A copy of this correspondence is attached hereto as Exhibit C.

12. On information and belief, at the time that this letter was written on behalf of CSC, all of the coal fly ash contemplated by the Contract had actually been delivered to Albany, New York and was available for pick-up by CSC. Although CSC and Batten knew this, they never told Great American.

13. After receiving the correspondence from CSC's counsel, Great American promptly began to investigate CSC's Bond claim. Through the Bond claim process, Batten was in contact with Great American. However, neither he nor any other representative of CSC every

advised Great American that the coal fly ash at issue was in Albany, New York ready for pick-up by CSC.

14. To the contrary, Batten wrote to Great American representatives outside of the Bond Division with whom he had had prior business dealings and exhorted Great American to pay the Bond claim "without delay or stall tactics."  A copy of this correspondence is attached hereto as Exhibit D.  Batten did not advise anyone at any time with Great American that: (i) the coal fly ash covered by the Bond had actually been delivered; or (ii) that he was aware of this fact because he sat on the Spartan Materials Board of Directors.

15. At all times during his interaction with Great American after the Bond claim was made, both CSC and Batten repeatedly reiterated the false assertion that none of the coal fly ash contemplated by the Contract had been delivered. This statement was untrue and Batten, as a Board member of Spartan Materials, knew full well that it was untrue.  This representation came both from Batten directly and also from counsel for CSC, undoubtedly acting subject to Batten's instructions.

16. Ultimately, based principally on the foregoing misrepresentations and material omissions of fact, Great American agreed to pay CSC the full amount of its Bond claim – $500,000 – in exchange for its execution of a Release and Assignment agreement (the "Release"). Batten accepted this proposal on behalf of CSC and on November 9, 2018 executed a written Release on behalf of CSC.  A copy of this Release, along with a copy of the $500,000 check issued to CSC by Great American, are collectively attached hereto as Exhibit E.

17. At no time during the negotiation of the Release did Batten or any other representative of CSC ever tell Great American: (i) that Batten was a member of the Spartan Materials Board of Directors, or (ii) that by virtue of his position on the Spartan Materials Board,

Batten was fully aware that all of the coal fly ash at issue –and subject to the Bond claim – was sitting in Albany, New York awaiting pick-up by CSC.  Further, no representative from Great American's principal, Spartan Materials, ever advised Great American of Batten's relationship to Spartan Materials, until after the claim with Batten and CSC were resolved by Great American.

18. Had Great American been advised of either of these facts, it would not have paid the Bond claim, but would instead have advised Batten to make arrangements to secure the coal fly ash governed by the Contract.  Further, Spartan Materials, was contractually obligated to indemnify Great American for any loss suffered under the Bond, and Great American would not have paid a claim made by a person serving as a director of the entity, Spartan Materials, that is obligated to indemnify Great American without a full investigation to determine the extent of an arms-length, non-conflict nature of the transaction upon being fully made aware of the applicable relationship.

19. Given the material misrepresentations and omissions of fact by Batten and CSC, Great American has incurred costs and damages that it would not have otherwise incurred, including but not limited to: (i) payment of the Bond claim pursuant to the Release; (ii) the initiation of an indemnity action in this Court against indemnitors Geoffrey Mather and Kathy Williams to recover the Bond claim payment; (iii) the initiation of the present case, and (iv) attorney fees and court costs associated with all litigation that, but for the misrepresentations and prevarications of CSC and Batten, would have been completely unnecessary.

### COUNT I
**(Fraud Against Batten)**

20. Great American incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 19 of the Complaint.

21. Batten, as CSC's principal, decided to make a claim under the terms of the Bond. The central "fact" undergirding the Bond claim was that the coal fly ash contemplated by the Contract had never been delivered by Spartan Materials. Indeed, Batten – both on his own and through counsel for CSC - advised Great American that CSC should be reimbursed the $500,000 it had "prepaid" for the coal fly ash because Spartan Materials had failed to deliver it. This statement was false and Batten knew it was false. Indeed, as a Spartan Materials Board member, Batten knew that all of the coal fly ash was being stored in Albany, New York awaiting pick-up.

22. Batten, both himself and through counsel, concealed from Great American the fact that he was a member of the Spartan Material board of directors.

23. Batten, both himself and through counsel, concealed from Great American the fact that the coal fly ash was in Albany, New York and overtly misrepresented that the fly Ash governed by the Contract had not been delivered.

24. The misrepresentations of fact made by Batten to Great American, and the facts that he concealed from Great American, were material to Great American's decision to honor CSC's Bond claim and pay CSC $500,000.

25. Great American reasonably, actually and justifiably relied on the misrepresentations of fact made by Batten through the Bond claim process, and did so to its detriment.

26. In electing to defraud Great American through the Bond claim process, Batten acted with actual malice.

27. As a direct and proximate result of its justifiable reliance on Batten's misrepresentations of fact, Great American has been damaged in an amount not yet fully ascertained but believed to exceed $300,000.

## COUNT II
### (Fraud Against CSC)

28. Great American incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 27 of the Complaint.

29. Batten, as CSC's principal, decided to make a claim under the terms of the Bond. The central "fact" undergirding the Bond claim was that the coal fly ash contemplated by the Contract had never been delivered by Spartan Materials. Indeed, Batten – both on his own and through counsel for CSC - advised Great American that CSC should be reimbursed the $500,000 it had "prepaid" for the coal fly ash because Spartan Materials had failed to deliver it. This statement was false and Batten knew it was false. Indeed, as a Spartan Materials Board member, Batten knew that all of the coal fly ash was sitting in Albany, New York awaiting pick-up.

30. CSC concealed from Great American the fact that Batten was a member of the Spartan Material board of directors.

31. CSC, both through Batten and counsel, concealed from Great American the fact that the coal fly ash was in Albany, New York.

32. The misrepresentations of fact made by CSC to Great American, and the facts that CSC concealed from Great American, were material to Great American's decision to honor CSC's Bond claim and pay CSC $500,000.

33. Great American reasonably, actually and justifiably relied on the misrepresentations of fact made by CSC through the Bond claim process, and did so to its detriment.

34. In electing to defraud Great American through the Bond claim process, CSC acted with actual malice.

35. As a direct and proximate result of its justifiable reliance on CSC's misrepresentations of fact, Great American has been damaged in an amount not yet fully ascertained but believed to exceed $300,000.

**WHEREFORE**, Great American Insurance demands judgment, jointly and severally against Defendant Henry Batten and Concrete Supply Company, LLC as follows:

a. Compensatory damages in an amount not yet fully ascertained but believed to exceed $300,000;

b. Punitive damages, court costs, and attorney fees;

c. Pre and Post Judgment Interest; and

d. Any other, further relief to which the Court deems Great American entitled whether at law or in equity.

Respectfully submitted,

/s/ James D. Houston
James D. Houston (0072794)
Strauss Troy Co., LPA
150 East Fourth St., 4th Floor
Cincinnati, Ohio 45202-4018
Telephone No.:  (513) 621-2120
Facsimile No.:  (513) 241-8259
Email:  jdhouston@strausstroy.com

*Counsel for Applicant, Great American Insurance Company*

13370910_2.docx